IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| | | |
| vs. | | Case No. 06-10018-JTM |
| | | |
| CARLOS ESCARCEJA, | | |
| Defendant. | | |

MEMORANDUM AND ORDER

The present prosecution arises from a January 20, 2006 traffic stop.  Deputy Henry T. Cocking of the Sedgwick County Sheriff's Office stopped a white minivan with New Mexico license plates traveling northbound on I-35.  Cocking, who was also driving north on canine patrol, stopped the van when that vehicle, at a curve in the road, crossed 2 feet across the broken white dividing line for 20 to 30 feet.  The van then abruptly steered back into its original lane. Defendant Escarceja was the driver of the van.

Cocking saw no other vehicles having difficulty with  maintaining a single lane. There were no road conditions which would render it impractical to maintain a single lane.  The winds were slight, no more than five to ten miles per hour, from the north.  The weather was cold but there was no precipitation.

As Cocking followed the van about 70 feet ahead of him, he saw its driver activate its bright lights within 100 feet of an oncoming truck, and further saw the van's driver fail to dim the vehicle's

high beams for a second southbound vehicle.  There is no evidence of any obstruction between the van and the other vehicles which might have shielded the vision of the other drivers.

Cocking activated his patrol vehicle's emergency lights and stopped the white minivan. He approached the van and, using his flashlight, saw a white female lying  across the back seat with her head toward the passenger side of the van.  Cocking asked the driver Escarceja for his license. Escarceja gave his driver's license and the vehicle's rental agreement to Cocking.  Cocking felt Escarceja appeared "very nervous."

He asked Escarceja about the purpose of the trip, his destination, and expiration date of the rental agreement. Escarceja said that he was driving to Kansas City for a few days.  Another woman was in the front passenger seat.  Cocking noted that the rental agreement provided that the van was to be returned the next day at 10:30 a.m.

Cocking started to walk back to his patrol vehicle to check the records and, with his flashlight, saw the leg of the passenger in the rear seat, Leticia Rodriguez, was stuck out from a blanket and had what appeared to be a "kilo" of drugs attached to her leg.

Cocking asked Escarceja who the woman was.  He said, "I don't know, we just picked her up at the bus station and she was very sick."

Cocking had no trouble conversing with Escarceja in English.

Cocking ordered Rodriguez out of the car several times.  She came out, and (according to Cocking) was"begging" him, trying to grab his hand, bowing and saying "please sir, please sir, please." He handcuffed Rodriguez while she said, "please sir, please, please sir, no, please sir." Cocking called for backup.

Another passenger in the van, Diva Almada, told the officers at the scene that she was also carrying narcotics on her person. She was searched and additional narcotics were discovered. Officers at the scene searched the passenger compartment of the minivan and discovered additional contraband in the purses and luggage of Almada and Rodriguez.

The officers at the scene gave Escarceja his Miranda rights. He said he had no idea what was going on, and denied knowledge of any cocaine in the vehicle. He also said that a mutual friend called him to pick up a couple of ladies and their husbands in New Mexico and drive them to Kansas City for $500.

Cocking used his trained drug dog Rommel to examine the van. Rommel alerted to a blue and tan bag between the driver and front passenger seats. The bag was found to contain two kilos of cocaine. Officers ultimately found a total of 60 pounds of cocaine in the vehicle.

Escarceja was arrested and indicted for possession of cocaine with intent to distribute. Rodriguez was not charged and has been deported. Diva Almada was also indicted for the same charge as defendant and has signed a cooperation agreement with the government.

This matter is before the court on the defendant's Motion to Suppress (Dkt. No. 71). In support of the motion to suppress, the defendant advances the following arguments: (1) that Cocking did not really see any traffic infraction; (2) the stop was pretextual; (3) that Escarceja was illegally held after the reason for the stop had ended; (4) that there was no reasonable suspicion and no consent for the search of the vehicle; and, (5) that his Fifth Amendment rights were violated by police questioning at the scene.

The court finds that the defendant's arguments are without merit and, as noted at the hearing of the motion and as amplified herein, the defendant's motion will be denied.

With respect to the traffic stop itself, defendant correctly notes that under *United States v. Ozbirn,* 189 F.3d 1194, 1198 (10th Cir. 1999), not all instances of a vehicle crossing a marked lane are *automatically* violations of K.S.A. § 8-1522, which provides that "[w]henever any roadway has been divided into two (2) or more clearly marked lanes for traffic....[a] vehicle shall be driven as nearly as practicable entirely within a single lane." Kan Stat. Ann. § 8-1522. Rather, courts should determine if maintenance of a single lane is "practicable" after looking at the totality of the circumstances.  In *Ozbirn*, the court held that the stop was legitimate under the circumstances there. Escarceja argues that the circumstances here (it was at night and on a curve) mean that *Ozbirn* is distinguishable and that there was no basis for a stop under the circumstances.

Against this, however, it may be noted that the van drifted out of its original lane and then was sharply drawn back into its original lane.  This would suggest that the crossing of the line was due to driver inattention rather than being caused by the curve of the road itself.  Further, the testimony of Cocking is that there were no road conditions which would make maintenance of a single road not practicable.  The court finds that Cocking had probable cause to stop the van for a violation of K.S.A. § 8-1522.

In addition, Cocking also had probable cause to stop the van for the failure to dim the van's high beams, which would independently justify a traffic stop under K.S.A. 8-1725.  The van was clearly within the distance under which such high beams should be lowered under the statute.  There is no evidence of any circumstance of the roadway which would have prevented the van's high beams from reaching the oncoming vehicles.  Defendant's suggested interpretation of the statute, which would require an officer to have independent proof that another driver has been *actually blinded* by the high beams would, as a practical matter, prevent enforcement of the statute by

4

requiring the officer to first pursue and stop the victim, inquire if offender's high-beam headlights actually struck her retinas, and only then pursue the offender.  In any event, it is irrelevant whether Escarceja could be ultimately convicted for a violation of the statute under Kansas law.  The court holds that where an officer in Kansas observes a driver failing to dim his high-beam headlights within the distance provided by the statute, and the officers can see no intervening physical obstruction between the vehicles to the headlights' glare, the officer has probable cause to stop the driver to investigate a potential violation of K.S.A. 8-1725.

Escarceja's argument of a pretextual stop reflects an argument that such stops violate various constitutional rights, citing *United States v. Laymon*, 730 F. Supp. 332, 340 (D. Colo. 1990).  The government correctly notes that following *Wren v. United States*, 517 U.S. 806, 812-13 (1996) and *United States v. Botero-Ospina*, 71 F. 3d 783 (10th Cir. 1995), the focus of the court must be on whether there was an objective basis for the stop rather than inquiring into the subjective motivation of the police.

The defendant's third argument cites *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997) (a traffic stop should last no "longer than is necessary to effectuate the stop, the scope of the detention must be carefully tailored to its underlying justification").  He argues that he was illegally detained after the traffic stop.  This argument is unpersuasive in light of the facts of the case.  Here, Cocking detected the cocaine from a plain-view look into the van as he was returning to his vehicle to run a check on the defendant's papers.  Accordingly, as noted below, there was probable cause to detain and search the entire vehicle even prior to the end of the traffic stop.

The defendant's fourth argument that there was no basis for searching the vehicle is also unpersuasive.  At the time the vehicle was searched, Deputy Cocking had two passengers of the van

who were admitting to carrying cocaine.  That in itself would provide probable cause to search the rest of the vehicle.  *See United States v. Sparks*, 291 F.3d 683 (10th Cir. 2002).  But, in addition, the defendant himself appeared very nervous and his initial statement to Cocking — that he didn't know who Rodriguez was and that she was lying down because she was very sick — was in itself suspicious after Cocking observed the kilo on Rodriguez's leg and she emerged from the van to energetically plead with the deputy.  Taken together, there was probable case to search the rest of the vehicle.

The final argument advanced by Escarceja is that his rights under *Miranda v. Arizona*, 384 U.S. 436, 467 (1966) were violated.  However, the argument in defendant's brief is purely conclusory.  After reciting the rules regarding *Miranda* warnings, the entirety of the brief's argument is stated in two sentences:  "Applying these well-settled rules, the officers' actions in this case constitute a clear violation of Mr. Escarceja's Fifth Amendment rights. Mr. Escarceja's eventual submission to further police-initiated interrogation does not establish a waiver of his right to counsel."  (Dkt. No. 72 at 9).  The testimony of Cocking is that the defendant was affirmatively presented with *Miranda* warnings and then voluntarily gave his statement about his trip.  The evidence establishes that Cocking communicated effectively with the defendant in English, and the court finds no basis for granting the request to suppress.

IT IS ACCORDINGLY ORDERED this 15th day of September, 2006, that the defendant's Motion to Suppress (Dkt. No. 71) is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE